UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOHNNIE M. HOLT                                                                               PLAINTIFF

v.                                                                      CIVIL ACTION NO. 3:10-cv-263-S

FEDERAL EXPRESS CORPORATION                                                    DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Federal Express Corporation ("Defendant"), for summary judgment pursuant to Fed. R. Civ. P. 56 on the Title VII, 42 U.S.C. § 2000e, et seq. claim by the plaintiff, Johnnie M. Holt ("Plaintiff"). (DN 26). For the reasons set forth below, the motion will be granted.

Plaintiff filed this action alleging retaliation in violation of Title VII, 42 U.S.C. § 2000e, stemming from the termination of his employment with Defendant in September of 2009. Plaintiff alleges that his termination was in retaliation for the filling of a lawsuit against Defendant in March of 2006. Defendant asserts that it is entitled to summary judgment in this action because Plaintiff cannot establish a *prima facie* case of retaliation under Title VII. Defendant further argues that even if Plaintiff could establish his *prima facie* case of retaliation, he cannot rebut the legitimate, non-retaliatory reason set forth by Defendant for its termination of Plaintiff's employment, namely that Plaintiff falsified company documents.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,

536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Id*. at 587; *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

Plaintiff claims that Defendant retaliated against him for filing a lawsuit against Defendant which alleged racial discrimination and retaliation under the Kentucky Human Rights Act. (DN 1, ¶¶ 1-2); *see also* (*Holt v. Federal Express Corporation*, Case No. 06-CI-00545). Title VII forbids an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Unlawful employment practices under Title VII include actions taken on the basis of "race, color, religion, sex or national origin"

that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2.

A plaintiff in a Title VII action may establish retaliation either by introducing direct evidence of retaliation or by providing circumstantial evidence that would support an inference of retaliation. *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 543 (6th Cir. 2008). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Id*. at 543-44 (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)). Plaintiff has not presented any direct evidence of unlawful retaliation by Defendant. Therefore, Plaintiff's claim must be established through circumstantial evidence.

When a plaintiff seeks to prove a claim of retaliation through circumstantial evidence, we evaluate claims under Title VII using the same *McDonnell Douglas/Burdine* evidentiary framework utilized in assessing claims of discrimination based on circumstantial evidence. *Imwalle*, 515 F.3d at 544; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973); *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987) (applying the *McDonnell Douglas* analysis to a retaliation claim); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) ("The *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under ADEA.").

Under the *McDonnell Douglas/Burdine* burden-shifting test, Plaintiff has the initial burden of establishing a *prima facie* case of retaliation by a preponderance of the evidence to withstand a motion for summary judgment. *See Imwalle*, 515 F.3d at 544. In order to establish a *prima facie*

case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) this exercise of protected activity was known to Defendant; (3) Defendant thereafter took an employment action adverse to Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Imwalle*, 515 F.3d at 544; *see also E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997).  Once Plaintiff has satisfied the initial burden of establishing a *prima facie* case of retaliation, the burden then shifts to Defendant to produce evidence of a legitimate, lawful reason for its actions.  *Id*.  If Defendant establishes a legitimate reason for its actions, then Plaintiff "must demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Id*.

Defendant argues in its motion for summary judgment that Plaintiff cannot establish a *prima facie* case of retaliation under Title VII.  (DN 26).  Defendant concedes that Plaintiff can demonstrate that he engaged in protected activity through the filing of his prior lawsuit, that Defendant knew about Plaintiff's prior lawsuit, and that terminating Plaintiff's employment was an adverse employment action.  (DN 26, Attachment 1, at 15).  Defendant contends, however, that Plaintiff cannot establish that there is a causal connection between the filing of his prior lawsuit against Defendant and the termination of his employment three years later, as required under the fourth prong of a *prima facie* case of retaliation.  *Id*.

Plaintiff alleges that Defendant terminated Plaintiff's employment in September of 2009 because he filed a lawsuit against Defendant in March of 2006.  (DN 1, Complaint 1-2); (DN 26, Attachment 3, Plaintiff's Deposition at 168, 175).  Other courts have held that a significant amount of time between the protected activity and the adverse employment action weighs against finding

an inference of retaliatory motive on behalf of the employer.  *See e.g., Strouss v. Mich. Dep't of Corrections*, 250 F.3d 336, 344 (6th Cir. 2001) (holding causal connection not established in the plaintiff's *prima facie* case of retaliation where the protected activity occurred three years before the adverse action was taken); *Candelaria v. EG & G Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994) ("no such inference [of a retaliatory motive] can be made where the relevant charges preceded the employer's adverse action by as much as three years"); *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110-11 (1st Cir. 1988) (holding that the plaintiff could not establish a causal connection in order to defeat summary judgment where the plaintiff's employment was terminated over two and one half years after the plaintiff filed an EEOC complaint).

Plaintiff argues that a temporal connection did exist, because his lawsuit against Defendant was ongoing and an upcoming deposition  in that litigation was scheduled involving his supervisor, Kevin Hart ("Hart").  However, Plaintiff has not put forth any evidence establishing that such a deposition was scheduled.  Further, the United States Court of Appeals for the Sixth Circuit has held that  "temporal proximity alone will not support an inference of a causal connection in the face of compelling evidence that the defendant company encouraged complaints about the relevant grievance."  *Strouss*, 250 F.3d at 344 (quoting *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 831 (6th Cir. 1999)).  The record reflects that Defendant encourages employees to file complaints through its "Internal EEO Complaint Procedure," its "Open Door Policy" with management and human resources, or its internal grievance procedure knows as the "Guaranteed Fair Treatment Procedure." (DN 26, Exhibit A, at ¶¶ 5, 6, ex. 1).  Also, Plaintiff specifically was encouraged to report any issues where he felt discrimination or retaliation was occurring.  (DN 35, Exhibit 12).  Plaintiff in fact filed multiple lawsuits, EEOC charges, and internal discrimination complaints between 2002 and 2006.

Therefore, even if we accept that an upcoming deposition was scheduled involving Hart, this temporal proximity alone is not sufficient for Plaintiff to establish a causal connection.

Beyond Plaintiff's argument that his lawsuit was temporally connected to the termination of his employment and that a deposition was scheduled involving Hart, Plaintiff offers only conclusory allegations to try to establish a causal connection. Plaintiff is required to provide more than conclusory allegations to defeat Defendant's motion for summary judgment. *See Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy."); *Moore v. Philip Morris Cos.*, *Inc.*, 8 F.3d 335, 343 (6th Cir. 1993) ("conclusory assertions are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment"). Reviewing all the record evidence, we find that Plaintiff cannot established even a *prima facie* case of unlawful retaliation under Title VII.

We further find that even if Plaintiff could establish a *prima facie* case for unlawful retaliation under Title VII, Plaintiff cannot demonstrate that Defendant's legitimate, non-retaliatory reason for its adverse employment action against Plaintiff is really a pretext for an unlawful retaliatory motive. If a plaintiff establishes a *prima facie* claim under Title VII for retaliation, the burden shifts to the defendant to establish that it had a legitimate, non-retaliatory reason for taking the adverse employment action against the plaintiff. *Imwalle*, 515 F.3d at 544. The burden then shifts back to the plaintiff to establish the legitimate, non-retaliatory reason proffered by the defendant is really a pretext for an unlawful retaliatory motive. *Id.*

In the case at hand, Defendant has put forth evidence that Plaintiff's employment was terminated because he falsified company documents in violation of Defendant's Policy, as outlined in the employee handbook. Plaintiff was employed as a "Courier" with Defendant, which is an employee who delivers packages and uses a handheld scanning device called a "Powerpad" to track packages while they are under the Courier's control. These devices allow Defendant to track and monitor customer packages from pick-up to delivery, and allow it to evaluate the efficiency and performance of the Courier (the Courier's "on-road" performance). Plaintiff's supervisor, Hart, conducted an investigation into Plaintiff's on-road performance and his use of "delivery scanning codes" in his Powerpad package scans for the month of September 2009.[1] After his investigation, Hart concluded that Plaintiff had improperly used certain scanning codes on his Powerpad to increase his on-road performance, including: (1) Bad Address Delivery Exception Scan; (2) Business Closed Delivery Exception Scan; and (3) Indirect Delivery Scan. *See* (DN 26, Exhibit 2, Hart Declaration ¶ 18); (DN 26, Exhibit 3, Hart Dep. at 48-52, 71).

Hart determined that Plaintiff's improper use of delivery exception codes warranted termination of Plaintiff's employment under Defendant's Policy. The Policy provides: "**NOTE**: Falsification of any Company document or record is a serious offense that can result in the issuance of a Warning Letter. See the following section on **Discharge Offense** for types of falsification that

---

[1] There is some dispute as to whether Plaintiff requested Hart to review his delivery scanning code usage. Defendant asserts that Plaintiff requested his on-road performance statistics be reviewed when he was not recognized as achieving a high on-road performance score at a routine Courier meeting and it was then that Hart noticed unusual use of delivery exception codes by Plaintiff and decided to conduct an investigation. Plaintiff asserts that he never requested such a review of his on-road performance. We find this disputed fact immaterial however, as it is well-established in the record that an investigation did occur into Plaintiff's on-road performance when the delivery exception scans Plaintiff used on his Powerpad appeared suspicious to his supervisor, Hart.

normally result in termination." (DN 26, Exhibit 2, Hart Declaration, FedEx's Policy at 2-5 "Acceptable Conduct") (emphasis in original). The Policy further provides under "Discharge Offense" that an employee will "normally be dismissed upon completion of an investigation confirming violations related to falsification" where the falsification of company records or documents "was for personal gain or benefit, or to conceal an offense that normally would have warranted termination." *See id.* Defendant's Policy even provides under the list of examples for "Discharge Offense":

> Example No. 2: Investigation confirms employee falsified delivery record to avoid Performance Reminder that would have been employee's third Performance Reminder/Warning Letter in a 12-month period. Employee would be terminated because falsification concealed a different offense that would have warranted termination.

*Id*. Defendant's Policy also provides that a "Performance Reminder" is a "notice of deficiency" and that "[t]he receipt of three notifications of deficiency within a 12-month period normally results in termination." *Id*.

Thus, Hart determined that Plaintiff's manipulation of delivery scanning codes in September of 2009 was a terminable offense because Plaintiff had two previous performance reminders in the past year and as such, it would have been to Plaintiff's personal gain to manipulate his on-road performance in order to avoid a third performance reminder. Plaintiff received a "Performance Reminder" for unsatisfactory on-road performance on September 10, 2008 (DN 35, Exhibit 6), and again on December 15, 2008 (*Id*. at Ex. 7 thereto). The record reflects that Plaintiff received Defendant's Policy on multiple occasions and signed documentation to that effect. *See* (DN 26, Exhibit 2, Hart Declaration ¶ 6); (DN 26, Exhibit 5, Plaintiff's Dep., at Ex. 3). Reviewing the

record, we conclude that Defendant has established a legitimate and lawful reason for the termination of Plaintiff's employment.

Plaintiff then must show that this proffered legitimate reason by Defendant is really a pretext for unlawful retaliation. *Imwalle*, 515 F.3d at 544. In *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), the United States Court of Appeals for the Sixth Circuit identified three ways in which a plaintiff is able to rebut a defendant's legitimate, nondiscriminatory reason and demonstrate pretext. The plaintiff may show that: (1) the employer's stated reason for taking the action against the employee has no basis in fact, (2) the reason offered did not actually motivate the action, or (3) the reason offered was insufficient to motivate the action. *Id.*; *see also Grain v. Trinity Health*, 431 F. App'x 434, 451 (6th Cir. 2011) (*overruled on other grounds*, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)). Plaintiff first attempts to rebut Defendant's legitimate reason for its employment decision by arguing that the reason proffered had no basis in fact. Plaintiff supports this argument by asserting that Plaintiff had always used the codes in the same manner and that other employees did as well.

Plaintiff cites to evidence provided by Defendant which reflects the use of scanning codes and the frequency of the use of exception delivery codes by Plaintiff and other employees under Hart's supervision, constructed by Defendant from backup data. *See* (DN 59). Taking the evidence in the light most favorable to Plaintiff, these scanning code records establish that other employees (who were not investigated and did not have two performance reminders) may also have been using scanning codes improperly. These records do not rebut the fact that after Hart noticed unusual delivery exception scanning code usage by Plaintiff, he conducted an investigation into Plaintiff's use of those codes during September of 2009 and concluded that Plaintiff's use of those scanning

codes was improper and for self gain to avoid a third performance reminder. Plaintiff admitted to Hart during the investigation that he would occasionally use delivery exception scans, such as "bad address" or "business closed" without actually arriving at the address, in order to meet his service deadlines. *See* (DN 26, Exhibit 3, Hart Declaration, at ¶ 20); (DN 26, Exhibit 5, Plaintiff's Dep., at 190-91). These delivery exception scans counted as "stops" in the calculation of his on-road performance and would increase his score. Hart concluded Plaintiff's use of these delivery exception codes was manipulative and was intended to improve Plaintiff's on-road performance in order to avoid a third performance reminder which would have warranted termination of his employment. The fact that Plaintiff may have used these codes in a similar manner in the past is immaterial, as Plaintiff was not under investigation in the past, nor was he facing a third performance reminder in one twelve month period. Similarly, the fact that other employees who were not under investigation or facing a third performance reminder may have used scanning codes similarly is insufficient to establish that Defendant's proffered legitimate and lawful reason has no basis in fact.

Plaintiff also attempts to rebut Defendant's legitimate and lawful reason for its employment action by showing that it was insufficient to motivate discharge of Plaintiff's employment. First, Plaintiff argues that he should have been given a warning letter under Defendant's Policy, rather than have his employment terminated. As discussed above, Defendant's Policy laid out specifically that when falsification of company documents was done for personal gain, it warranted immediate termination of employment. Because Hart concluded that Plaintiff manipulated his delivery scans in order to improve his on-road performance and avoid a third performance reminder in one year, this falls exactly within the Policy's list of examples for a "Discharge Offense."

Plaintiff also argues that Hart's investigation was deficient. Plaintiff asserts that Hart should have looked at other dates in his investigation or compared Plaintiff's use of scanning codes with other employees. This argument is insufficient to establish pretext. We do not sit as a "super personnel department" and the record shows that Hart "reasonably relied on particularized facts that were before [him]" in deciding to terminate Plaintiff's employment. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008); *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 599-600 (6th Cir. 2007) (concluding that the employer "presented sound, nondiscriminatory reasons for [disciplining the employee] based on a reasonable investigation of events that occurred"). There is no requirement "that the decisional process used by the employer be optimal or that it left no stone unturned." *Michael*, 496 F.3d at 599.

Ultimately, we conclude that Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII, and even if he were able to, we conclude that Defendant has established a legitimate, non-retaliatory reason for terminating Plaintiff's employment that Plaintiff has failed to rebut as pretextual. Defendant's motion for summary judgment will be granted.

An order consistent with this opinion will be entered this date.

August 8, 2012

Charles R. Simpson III, Judge
United States District Court

D02